UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

JUANITA REYNERO,                      §
                                      §
          Plaintiff,                  §
VS.                                   §      CIVIL ACTION NO. 5:14-CV-4
                                      §
TEXAS ROADHOUSE, INC., *et al*,       §
                                      §
          Defendants.                 §

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff's Motion to Remand (Dkt. No. 2), in which she challenges the timeliness of Defendants' removal of this case from the 111th Judicial District Court of Webb County, Texas. Under the Local Rules of this Court, Defendants were allowed 21 days to respond to Plaintiff's Motion once it was filed. *See* L.R. 7.3 & 7.4. Defendants declined to do so, and the Court now treats Plaintiff's Motion as unopposed. *See* L.R. 7.4. After reviewing Plaintiff's Motion and the applicable law, the Court agrees that Defendants' removal of this case was untimely. Plaintiff's Motion to Remand (Dkt. No. 2) is therefore **GRANTED**.

## I.   BACKGROUND

On March 26, 2013, Plaintiff brought a negligence suit in the 111th Judicial District Court of Webb County against Texas Roadhouse, Inc., Texas Roadhouse Holdings, LLC (doing business as Texas Roadhouse), Roadhouse Enterprises, Inc. (collectively, "the organizational defendants"), and A.J. Ramos. *See* Dkt. No. 1 Attach. 2 at 2. Plaintiff, Roadhouse Enterprises, Inc., and Ramos are all citizens of Texas. *Id.* Attach. 2 at 1–2. Plaintiff alleges that while she was dining at the

Laredo location of Texas Roadhouse, a restaurant, she slipped and fell on "peanut shells or husks and/or whole or partial peanuts" left on the floor. *See id.* Attach. 2 at 3. The organizational defendants were served with Plaintiff's Original Petition on April 5, 2013, and Ramos, the restaurant's manager, was served on April 29, 2013. *Id.* at 2–3.

On December 12, 2013, counsel for the defendants met with Ramos and allegedly learned for the first time that he was not in charge of training employees "on keeping the floor free of peanut shells or husks or whole or partial peanuts or in charge of warning patrons regarding the above mentioned peanut related products that may or may not be on the ground." *See id.* at 2 & Attach. 6 at 1. On January 10, 2014, Defendants filed a Notice of Removal in this Court. *See* Dkt. No. 1. Even though it was filed approximately 250 days after they were served with Plaintiff's Original Petition, Defendants argue that removal was timely because the notice was filed within 30 days of the December 12, 2013, meeting (or January 9, 2014, affidavit) in which counsel learned of the fact that gave notice of Ramos's improper joinder. *See id.* at 2. Defendants also advance other arguments regarding the impropriety of Roadhouse Enterprises, Inc.'s joinder, which they had advanced since the beginning of this case in state court. *See id.* at 6–7 & Attach. 3 at 1–2.

On February 6, 2014, Plaintiff responded with a Motion to Remand. *See* Dkt. No. 2. Plaintiff argues that Defendants' removal was untimely under *SWS Erectors, Inc. v. Infax*, 72 F.3d 489 (5th Cir. 1996), because a defendant's subjective knowledge of a fact cannot form the basis for an extension of the removal period

beyond the usual 30 days following service. *See* Dkt. No. 2 at 4–6. She also argues that both Ramos and Roadhouse Enterprises, Inc. were properly joined in the lawsuit. *See id.* at 6–10.[1]

## II.   LEGAL STANDARD

A defendant in state court may remove any civil case that originally could have been filed in federal court. 28 U.S.C. § 1441(a). A civil case originally could have been filed in federal court if there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).[2]

Even if a plaintiff has facially precluded diversity removal by suing a party who shares his citizenship, a defendant may still remove the case to federal court if he can show that all non-diverse defendants were improperly joined. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572–73 (5th Cir. 2004). A defendant can establish improper joinder by showing either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003).

The time period in which a defendant must remove the case to federal court is governed by 28 U.S.C. § 1446(b). Section 1446(b) sets forth two paragraphs with separate timing provisions. The first "deals with civil actions that are removable at

---

[1] Because the Court concludes that Defendants' removal was untimely, the Court will not discuss the Parties' arguments regarding whether either defendant was in fact improperly joined.

[2] Neither Party seems to contest that the amount-in-controversy requirement is met in this case given that Plaintiff's Original Petition in state court seeks "monetary relief over $200,000.00 but not more than $1,000,000.00 . . . ."

the time of commencement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 757

(11th Cir. 2010). It states:

> The notice of removal of a civil action or proceeding shall be filed
> within thirty days after the receipt by the defendant, through service
> or otherwise, of a copy of the initial pleading setting forth the claim for
> relief upon which such action or proceeding is based, or within thirty
> days after the service of summons upon the defendant if such initial
> pleading has then been filed in court and is not required to be served
> on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1). The second "deals with civil actions that were not

removable, or could not have been determined to be removable, until 'an amended

pleading, motion, order or other paper' establishes their removability." *Pretka*, 608

F.3d at 757. It states:

> If the case stated by the initial pleading is not removable, a notice of
> removal may be filed within thirty days after receipt by the defendant,
> through service or otherwise, of a copy of an amended pleading,
> motion, order or other paper from which it may first be ascertained
> that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).

"As 'the effect of removal is to deprive the state court of an action properly

before it, removal raises significant federalism concerns.' The removal statute is

therefore to be strictly construed, and any doubt about the propriety of removal

must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491

F.3d 278, 281–82 (5th Cir. 2007).

## III.  ANALYSIS

The timeliness of Defendants' removal in this case hinges on whether the

timing provision from the second paragraph of § 1446(b) was invoked on or after

December 10, 2013 (thirty days before Defendants filed their Notice of Removal).  In their Notice of Removal, Defendants argue that removal was timely under the second paragraph of § 1446(b) because their counsel first learned of the fact giving notice of improper joinder, *i.e.* the fact that Ramos (a non-diverse defendant) was not responsible for training employees regarding peanut safety, on December 12, 2013, memorialized in an affidavit created by Ramos on January 9, 2014.

In her Motion to Remand, Plaintiff counters that Ramos's affidavit is clearly not "an amended pleading, motion, [or] order."  Thus, Defendants must think that Ramos's affidavit constitutes "other paper" within § 1446(b)'s second paragraph.  However, Plaintiff argues, *SWS Erectors* forecloses this reasoning because it held that "'other paper' conversion requires a *voluntary act by the plaintiff*," and that "the defendant's subjective knowledge cannot convert a case into a removable action."  *SWS Erectors*, 72 F.3d at 494.  Defendants declined to respond to Plaintiff's Motion to Remand, and they have thus provided no input regarding this argument.

### A. Applicability of *SWS Erectors*

Plaintiff bases her entire untimeliness argument on the holding of *SWS Erectors*.  However, there is good reason to believe that the holding of that case should not apply to cases where the ambiguity of removability concerns the alleged improper joinder of a party rather than an ambiguous amount in controversy.

In *SWS Erectors*, the plaintiff sued the defendant in state court for breach of contract, and the complaint did not allege a specific amount of damages.  *Id.* at 491.  The defendant's counsel learned in a telephone conversation with the plaintiff's

counsel that plaintiff's damages exceeded the required jurisdictional amount and memorialized the conversation in an affidavit. *Id.* At that point, the defendant removed to federal court, but it did so in the wrong division of this District. *Id.* The case was remanded back to state court on that basis. *Id.*

More than a month later, the defendant deposed the plaintiff's president, who testified that the plaintiff's damages exceeded the required jurisdictional amount. *Id.* at 492. A few days later, the defendant removed the case to the correct division of this District, arguing that the deposition transcript was "other paper" from which it was first ascertainable that the case had become removable. *Id.* The plaintiff then filed a motion to remand, which the district court denied. *Id.*

When reviewing the district court's denial of remand, the Fifth Circuit held that defense counsel's affidavit could not constitute "other paper" under the second paragraph of § 1446(b) because "'other paper' conversion requires a *voluntary act by the plaintiff*" and "the defendant's subjective knowledge cannot convert a case into a removable action." *See id.* at 494.

The broad language of the holding seems to apply to the instant case. However, in *Delaney v. Viking Freight, Inc.*, 41 F. Supp. 2d 672 (E.D. Tex. 1999), another district court set forth a persuasive argument about why *SWS Erectors*'s reasoning should not apply in the context of improper joinder. The court first explained why the "subjective knowledge" reasoning is inapposite:

> To begin with, *SWS Erectors* is not a fraudulent joinder case and its analysis does not fit well within the framework of fraudulent joinder. The gist of Defendants' "subjective knowledge" argument seems to be that under *SWS Erectors* any information known to a defendant that

was acquired by some means other than direct communication from the plaintiff will be disregarded for purposes of determining when the defendant could first ascertain that a case is removable.  However, a review of the case law discloses that no such principle applies in the fraudulent joinder context.  In cases involving fraudulent joinder, the removing party frequently—if not usually—has to rely on subjective knowledge to some degree to ascertain the existence of a fraudulently joined party.

*Id.* at 677.[3]  Next, the court explained why the "voluntary act" requirement is inapposite:  "[T]he court's passing reference to a voluntary act requirement in *SWS Erectors* appears to be an allusion to the long-standing 'voluntary-involuntary rule,' which has been held to not apply in the fraudulent joinder context."  *Id.* at 677–78.

*Delaney*'s reasoning squarely applies to the instant case.  Defendants had to rely to a large extent on Ramos's subjective knowledge of his own duties in order to ascertain the alleged improper joinder.  If this subjective knowledge could not serve as the basis for removal, then the organizational defendants in this case would have never been able to remove the case under the second paragraph unless Ramos sought and obtained dismissal of the claim against him within one year of the action being brought in state court.  *See* 28 U.S.C. § 1446(c)(1).  Such a rule would be harsh given that it was not facially apparent from the Original Petition that Ramos was improperly joined, and the organizational defendants may have reasonably taken almost the entire 30-day period from the date of service to discover the facts they allege gave rise to improper joinder.  Thus, the facts of this

---

[3] *Delaney*'s references to "fraudulent joinder" are synonymous with references to "improper joinder" throughout this Memorandum and Order, though the Fifth Circuit has since stated that it prefers the phrase "improper joinder."  *See Smallwood*, 385 F.3d at 571 n.1.

case provide the paradigmatic example of why the *SWS Erectors*'s holding is a poor fit in the context of improper joinder.

### B. Timeliness Standard for Improper–Joinder Removal

Even though *SWS Erectors*'s holding is inapplicable in this case, Defendants' removal was not necessarily timely.  The Court must still analyze the timeliness of Defendants' removal without the constraints of that holding.

This Court and other district courts within the Fifth Circuit seem to state the standard for timeliness of improper-joinder removal in two subtly different ways. While these courts may not have intended to set forth different standards, the Court still believes that the distinction merits discussion given that the distinction, if it exists, could matter under the facts of this case.

Some courts seem to indicate that removal is timely if done within 30 days of a defendant's subjective discovery of facts that make the case removable.  *See Li Bin Chen v. Mitsubishi Heavy Indus. America, Inc.*, No. G-08-238, 2009 WL 540957, at *1 (S.D. Tex. Mar. 4, 2009) ("Where improper joinder is found, the 30-day period runs from the time the improper joinder *is discovered* . . . ." (emphasis added)) (Miller, J.); *Frisby v. Lumbermens Mut. Cas. Co.*, No. H-07-015, 2007 WL 2300331, at *2 (S.D. Tex. Feb. 20, 2007) ("[T]he Fifth Circuit has been quite clear that in cases of improper joinder, the 30 day time period begins to run from the time the improper joinder *is discovered*." (emphasis added)) (Miller, J.).  Other courts seem to indicate that removal is timely if done within 30 days of when it was objectively discoverable that the case had become removable.  *See Harrod v. Zenon*, No. 03-

1088, 2003 WL 21748687, at *5 (E.D. La. July 25, 2003) ("In removal cases involving fraudulent joinder claims, the period for timely removal commences when the defendant *can first ascertain* that a party has been fraudulently joined." (emphasis added)); *Delaney*, 41 F. Supp. 2d at 674 ("In the fraudulent joinder context, a defendant has 30 days from the date that the fraudulent joinder *could first be ascertained* in which to file a notice of removal." (emphasis added)).  Other courts have even stated both versions of the standard in the same opinion.  *See Beaty v. Wal-Mart Stores Texas, LLC*, No. C-11-76, 2011 WL 1155963, at *4 (S.D. Tex. Mar. 24, 2011) ("With respect to timeliness, '[t]he Fifth Circuit has been quite clear that in cases of improper joinder, the 30 day time period begins to run from the time the improper joinder *is discovered*.'  Thus, the defendant has thirty days to remove the case to federal court from when 'the fraudulent joinder *could first be ascertained*.'" (quoting *Frisby*, 2007 WL 2300331, at *2; *Delaney*, 41 F. Supp. 2d at 674) (emphasis added)); *Ayres v. Sears*, 571 F. Supp. 2d 768, 772–74 (W.D. Tex. 2008) (stating that "[w]hile the language of § 1446(b) does not expressly mention fraudulent joinder, courts have held that defendants have thirty days to remove a case *once they discover* the existence of fraudulent joinder," and then stating in its application of the standard that "the Court finds that it can reasonably look to more than one date as the time when Defendants *should have learned* of the alleged fraudulent joinder" (emphasis added)).[4]

---

[4] *Ayres* seemed to consciously advance both standards.  There, the court began with the presumption that the defendant bore the burden of stating with specificity when it subjectively became aware of the facts giving rise to removability and then, once it noted that defendant did not do so, proceeded to determine when the defendant objectively should have become aware of those

This apparent ambiguity likely arose because all of these cases derive the standard they set forth from the same source: *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812 (5th Cir. 1993).[5]  When discussing the timeliness of a defendant's removal under the second paragraph of § 1446(b), the Fifth Circuit in *Jernigan* stated that "Ashland Oil thus avers that not until March 23, 1990, *could it discover* that none of the Louisiana corporations were proper defendants and that therefore diversity jurisdiction existed."  *See id.* at 815 (emphasis added).   In the next sentence, however, it stated that "Jernigan has never controverted this assertion, so we, like the district court, accept as true Ashland Oil's contention that it *was not aware* that the case was removable until March 23rd."  *See id.* (emphasis added).

While *Jernigan* may not have been entirely clear whether its holding was setting forth a subjective or objective standard, the Fifth Circuit clarified *Jernigan*'s holding in *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382 (5th Cir. 2000).   There, the Fifth Circuit stated that *Jernigan* held the defendant "properly invoked the extended period . . . provided by the second paragraph of § 1446(b) because it was not until . . . it received a copy of the answer of one of the fraudulently joined . . . defendants, that [it] 'could . . . discover* that none of the [other defendants] were proper defendants and that therefore diversity jurisdiction existed.'"  *Badon*, 224 F.3d at 390 n.13 (emphasis added).

facts.  *See Ayres*, 571 F. Supp. 2d at 773–74.  The court made clear, though, that it was only doing so "as a guide for determining when a defendant first learned of a plaintiff's fraudulent joinder," *i.e.* as seemingly circumstantial evidence of when the defendant made his subjective discovery.  *See id.* at 774 n.5.

[5] *Beaty*, *Frisby*, and *Li Bin Chen* all cite *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 390 n.13 (5th Cir. 2000).  However, footnote 13 of *Badon* is dedicated to discussing the holding in *Jernigan*.

This interpretation of *Jernigan* makes sense; *Jernigan* specifically addressed the second paragraph of § 1446(b), which concerns when "it *may first be ascertained* that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3) (emphasis added).  The statutory language suggests an objective inquiry about when the facts giving rise to removal become available, not a subjective inquiry about when a defendant actually discovers those facts.  Thus, under the second paragraph of § 1446(b), a defendant in an improper-joinder case must remove within 30 days from the point when he objectively could have discovered that the case was removable.

### C. Standard Applied

Defendants claim in their Notice of Removal that their counsel did not receive information that gave rise to Ramos's improper joinder until December 12, 2013.  Specifically, they claim Ramos informed counsel for the first time on that date that his duties as manager did not include training employees regarding peanut safety.  Thus, they argue, his affidavit of January 9, 2014, constitutes "other paper" triggering § 1446(b)'s second paragraph.

While Ramos's affidavit does not specify as much, he presumably had subjective knowledge of his own work duties from the moment Plaintiff brought suit in state court.  The implication in Defendants' Notice of Removal is that even though Ramos may have had subjective knowledge of his duties from the moment he was served on April 29, 2013, the organizational defendants did not have subjective knowledge of Ramos's duties until his January 9, 2014, affidavit.  Also

implicit in their argument is that receiving Ramos's affidavit was the first time that they *could have* learned of the facts giving rise to Ramos's improper joinder.   The Court disagrees.

While Defendants attempt to frame a separation between the organizational defendants and Ramos by stating that "counsel for Defendants Texas Roadhouse, Inc., Texas Roadhouse Holdings, LLC D/B/A Texas Roadhouse, and Roadhouse Enterprises, Inc. were provided with information by A.J. Ramos" at the December 2013 meeting, a review of the filings shows that Ramos and the organizational defendants have shared the same lawyer since the beginning of the case in state court.   *See* Dkt. No. 1, Attach. 3.   This Court has found that fact dispositive in an identical case:

> [T]he Court finds that the same basis for alleging fraudulent joinder that exists now also existed at the time of the original petition; namely, the inability to state a negligence claim against an employee without an independent duty, and the fact that Ganley was not the manager at the time in question.   As counsel represents both Wal-Mart and Ganley, counsel should have been aware that Ganley was not the manager on the date in question almost as soon as Defendants were served with the original petition.   In other words, many of the same fraudulent joinder arguments Defendants now make, even if meritorious, could have been made on the basis of the original petition. Therefore, the alleged fraudulent joinder could "first be ascertained" well over thirty days ago.

*Beaty*, 2011 WL 1155963, at *4.

In this case, even if the organizational defendants could not have reasonably discovered the facts giving rise to improper joinder from the face of the Original Petition, they were certainly on notice of those facts when they filed their Answer in state court on May 3, 2013.   In their Answer, Ramos raised the argument that he

was improperly named in the lawsuit because he was not present on the day of the accident. At that point, the organizational defendants could have and should have easily discovered the fact set forth in Ramos's January 9, 2014, affidavit; they all had a hunch that Ramos was not a proper defendant and they all shared the same lawyer.[6]

---

[6] The Court believes that imposing a requirement on Defendants to do this minor investigation does not run afoul of the rules in *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992) and *Bosky v. Kroger Texas, LP*, 288 F.3d 208 (5th Cir. 2002). In *Chapman*, the Fifth Circuit held "that for the purposes of the first paragraph of § 1446(b), the thirty day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *See Chapman*, 969 F.2d at 163. In *Bosky*, the Fifth Circuit held that "[t]he *Chapman* rule does not apply to the second paragraph of section 1446(b), but rather the information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b)." *See Bosky*, 288 F.3d at 211.

The Court is aware that at least one other district court recently reached the same result in spite of *Chapman* and *Bosky*. *See Freeman v. SSC San Antonio Silver Creek Operating GP*, No. SA-13-CV-879-XR, 2013 WL 6200220, at *2 (W.D. Tex. Nov. 26, 2013). In *Freeman*, the court found that a co-defendant's answer denying any involvement with the parties in the suit was sufficient to trigger the 30-day period in the second paragraph of § 1446(b). *See id.* at *3. The court stated that "[u]nder *Chapman*, it would be inappropriate for the Court to require . . . Defendants to engage in due diligence to find any putative improper joinder at the time the original complaint was filed. However, the situation changed when facts were presented to the Defendants indicating that removal was possible." *See id.* The court then concluded that the co-defendant's answer clearly indicated that the co-defendant was improperly joined and "[i]t is objectively reasonable for the Court to assume that a defendant reads its co-defendant's answer." *See id.*

In this case, it is objectively reasonable for the Court to assume that, when co-defendants share the same lawyer, they collectively meet to discuss common strategy upon being sued. Furthermore, it is objectively reasonable for the Court to assume that when those defendants are presented with facts indicating that removal is possible, they should at least go as far as seeking facts based on a co-defendant's subjective knowledge that directly bear on removability. While the *Freeman* court stated that the requirement it was imposing was "not the kind of 'due diligence' that *Chapman* meant to prohibit" because the improper joinder was unequivocally clear from the co-defendant's answer, *see id.* n.3, the Court notes that the due diligence required of the organizational defendants in this case is not the kind of due diligence that *Chapman* or *Bosky* meant to prohibit simply because those holdings do not apply in this case.

Both of those cases dealt with ambiguous amounts in controversy, not improper joinder. In both cases, the court was concerned with encouraging plaintiffs to make the amount in controversy clear (a fact about which plaintiffs typically possess more information) if they wished to trigger either of § 1446(b)'s time periods. *See Bosky*, 288 F.3d at 211; *Chapman*, 969 F.3d at 163. In cases of improper joinder, though, defendants typically possess more information or access to information bearing on improper joinder. The holdings in *Chapman* and *Bosky* thus do not make sense when applied to improper-joinder cases.

"[T]he traditional understanding was that removal was both permitted *and required* 'as soon as the action assumes the shape of a removable case.' Otherwise a defendant could wait and see how it fared in the state court proceedings before deciding whether to remove. The second paragraph of § 1446(b) continues the requirement of promptness." *Pretka*, 608 F.3d at 760 (quoting *Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 101 (1898)). The Court finds that all of the defendants could have discovered removability when the Answer was filed on May 3, 2013, and they may not use Ramos's affidavit as "other paper" triggering § 1446(b)'s second paragraph. Allowing them to do so would invite collusion among co-defendants who share a common lawyer, whereby one co-defendant purposely keeps a vital fact bearing on removability under his hat for as much as one year after the action was commenced in state court and conveniently pulls it out when removal would be strategically advantageous for the group.[7] Thus, Defendants' removal in this case was untimely.

---

[7] The Court notes that even if a subjective standard were used, the result in this case would be the same. A similar method as the one used in *Ayres*, using an objective inquiry about when the defendants should have discovered facts giving rise to removal to inform the subjective inquiry, is preferable to a purely subjective inquiry where the Court would essentially have to take the defendants' word regarding when they discovered certain facts. The court in *Ayres* only began its objective inquiry because the defendant did not allege a specific date when it learned of the facts giving rise to removal. *See Ayres*, 571 F. Supp. 2d at 773–74. While Defendants in this case do allege a specific date when they first learned of the fact giving rise to removal, the date is so incredible that they may as well not have alleged any date at all.

Under the facts of this case, the Court finds that all of the defendants subjectively knew of the facts giving rise to removal shortly after the Answer was filed. All defendants shared the same lawyer who apparently spoke with Ramos about the possibility of improper joinder at the earliest stages of litigation, given that they asserted Ramos was an improper defendant in the Answer. Furthermore, the fact that they claim they needed before they could remove was not difficult to discover; their lawyer had to ask Ramos a single question, which Ramos could answer based on his subjective knowledge. The Court thus finds it incredible that the organizational defendants first discovered that Ramos was not responsible for peanut-safety training at the December meeting.

## IV.   CONCLUSION

Because Defendants removal was untimely, Plaintiff's Motion to Remand (Dkt. No. 2) is hereby **GRANTED**.  This case is **REMANDED** to the 111th Judicial District Court of Webb County, Texas.  The Clerk of Court is directed to mail a certified copy of this Order to the clerk of the 111th Judicial District Court of Webb County, Texas.

It is so **ORDERED**.

**SIGNED** this 9th day of April, 2014.

Marina Garcia Marmolejo
United States District Judge